# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MYRA CUNNINGHAM,** | : CIVIL ACTION NO. 1:08-CV-0587 |
| **Plaintiff** | : (Judge Conner) |
| v. | : |
| **PENN NATIONAL HOLDING CORPORATION, t/d/b/a PENN NATIONAL INSURANCE,** | : |
| **Defendant** | : |

## MEMORANDUM

Plaintiff Myra Cunningham ("Cunningham") brings this action alleging that defendant Pennsylvania National Mutual Casualty Insurance Company[1] ("Penn National") discriminated against her on the basis of race while she served as one of the company's senior raters. Presently before the court is defendant's motion (Doc. 14) for summary judgment. For the reasons that follow, defendant's motion will be granted in part and denied in part.

### I. Statement of Facts[2] and Procedural History

On November 8, 1999, Penn National hired Cunningham, an African-American female, as a commercial rater. (Doc. 16 ¶ 2; Doc. 25 ¶ 2; Doc. 1 ¶ 16; Doc. 3 ¶ 16). Cunningham was promoted to the position of senior rater in 2002. (Doc. 16

---

[1] The caption identifies defendant as Penn National Holding Corporation, but defendant avers that it is properly identified as Pennsylvania National Mutual Casualty Insurance Company. (See, e.g., Doc. 3 at 1; Doc. 14 at 1.)

[2] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, who is the nonmoving party. See infra Part II.

¶ 5; Doc. 25 ¶ 5). Cunningham alleges that she is paid less than all of the other senior raters, who are Caucasian, and less than many of the raters, most of whom are Caucasian, (Doc. 1 ¶ 21), and she contends that she receives lower pay as a result of her race, (Doc. 1 ¶ 33). Penn National argues that Cunningham's earnings have been affected by performance issues[3] and by the fact that she had less than one year of industry experience before she began to work for Penn National. (See Doc. 15 at 17-18; see also Doc. 16 ¶ 3; Doc. 25 ¶ 3.)

In February 2007, Penn National posted an opening for a newly-created supervisory position, called Manager Centralized Audit & Agents Umbrella Processing. (Doc. 16 ¶¶ 50-51; Doc. 25 ¶¶ 50-51). Cunningham and other individuals applied for the position. (Doc. 16 ¶ 52; Doc. 25 ¶ 52). Penn National ultimately awarded the position to another individual, Michelle Hathaway ("Hathaway").

---

[3] In her performance evaluation for 1999, Cunningham received a "merit rating" of 2.2 / 4.0. (Doc. 16 ¶ 18; Doc. 25 ¶ 18). In 2000 and 2001, she received a rating of 2.7 / 4.0. (Doc. 16 ¶¶ 19-20; Doc. 25 ¶¶ 19-20). In 2002, the year in which she was promoted to senior rater, she received a 2.1 / 4.0. (Doc. 16 ¶ 21; Doc. 25 ¶ 21).
In 2003, Penn National began using a 5.0 scale to rate employee performance, with a 3.0 reflecting that an employee was "meeting expectations." (Doc. 16 ¶¶ 23-24; Doc. 25 ¶¶ 23-24). Cunningham received a 2.8 / 5.0 in her performance evaluation for 2003, (Doc. 16 ¶ 25; Doc. 25 ¶ 25), and a 3.0 / 5.0 in 2004. (Doc. 16 ¶ 28; Doc. 25 ¶ 28). In her 2005 performance evaluation, Cunningham again received a 2.8 / 5.0, (Doc. 16 ¶ 30; Doc. 25 ¶ 30), and she was then "placed on a corrective action plan based on her job performance." (Doc. 16 ¶ 33; Doc. 25 ¶ 33). Penn National removed her from the corrective action plan on August 10, 2006. (Doc. 16 ¶ 34; Doc. 25 ¶ 34). Her rating for 2006 was 3.0 / 5.0. (Doc. 16 ¶ 36; Doc. 25 ¶ 36). In 2007, Cunningham received a 1.7 / 5.0 and was again placed on corrective action, until April 2008. (Doc. 16 ¶¶ 38-40; Doc. 25 ¶¶ 38-40).
Defendant asserts that plaintiff's "performance appraisal" and the fact that she "was also subjected to corrective action for poor job performance" affected her annual salary increases. (Doc. 15 at 13).

2

(Doc. 16 ¶¶ 52, 55; Doc. 25 ¶¶ 52, 55). Hathaway is Caucasian. (Doc. 1. ¶ 31; Doc. 3 ¶ 31). Cunningham claims that Penn National denied her the promotion on the basis of her race. (Doc. 1 ¶ 34).

Cunningham filed the present action on April 1, 2008. She claims that Penn National engaged in unlawful race-based discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and 42 U.S.C. § 1981. (See Doc. 1). Penn National filed a motion for summary judgment (Doc. 14) pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The parties have fully briefed these issues, which are ripe for disposition.

## II. **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmovant on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

**III. <u>Discussion</u>**

Cunningham alleges that Penn National subjected her to discriminatory treatment because of her race, thereby violating Title VII[4] and 42 U.S.C. § 1981.[5] Federal courts use the three step burden-shifting analysis established in <u>McDonnell</u>

---

[4] Title VII provides, in pertinent part, as follows:

It shall be an unlawful employment practice for an employer --
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's *race*, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's *race*, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a) (emphasis added).

[5] The Supreme Court has construed 42 U.S.C. § 1981 to forbid "'racial' discrimination in the making of private and public contracts." <u>See</u> <u>Pamintuan v. Nanticoke Mem'l Hosp.</u>, 192 F.3d 378, 385 (3d Cir. 1999) (citing <u>St. Francis College v. Al-Khazraji</u>, 481 U.S. 604, 609 (1987)). Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), to analyze claims brought under both statutes.[6] See Pamintuan, 192 F.3d at 385.

Under McDonnell Douglas, the first step requires a plaintiff to establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class, (2) she was qualified for the position he held or sought, (3) she suffered an adverse employment action, and (4) the circumstances of the adverse

---

[6] To withstand a motion for summary judgment, a plaintiff must establish that his or her "protected trait played a role in the employer's decision-making process and had a determinative influence on the outcome of that process." Ulitchney v. Potter, No. 3:04-CV-0991, 2006 WL 1722391, at *2 (M.D. Pa. June 16, 2006) (quoting Monaco v. Amer. Gen. Assurance. Co., 359 F.3d 296, 300 (3d Cir. 2004)). A plaintiff may meet this burden with either direct evidence, see Price Waterhouse v. Hopkins, 490 U.S. 288 (1989) (O'Connor, J., concurring), or circumstantial evidence, see McDonnell Douglas, 411 U.S. at 802.
In the instant case, Cunningham has not provided direct evidence of discrimination. Direct evidence is "evidence that proves an ultimate fact in the case without any process of inference." Woodson v. Scott Paper Co., 109 F.3d 913, 930 (3d Cir. 1997). An employer who discriminates "will almost never announce a discriminatory animus or provide employees or courts with direct evidence of discriminatory intent." Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999). Therefore, a plaintiff who wishes to establish a *prima facie* case of discrimination using direct evidence "faces a high hurdle." Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998). The court finds no evidence to suggest that Cunningham has cleared this hurdle in the instant action. Therefore, the McDonnell Douglas framework applies to her Title VII claim.

5

employment action give rise to an inference of discrimination.[7]  Johnson v. Keebler-Sunshine Biscuits, Inc., 214 F. App'x 239, 241-42 (3d Cir. 2007); Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974 (3d Cir. 1998).  Once the *prima facie* case is established, the defendant bears a burden of production to articulate some "legitimate, nondiscriminatory reason" for the plaintiff's treatment.  Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999) (citing McDonnell Douglas, 411 U.S. at 802); Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir. 1997).  If the defendant meets its burden, then the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination."  Johnson, 214 F. App'x at 241-42.  The court now inquires into the application of the above-described framework to the action *sub judice*.

### A. **Plaintiff's *Prima Facie* Case**

The undisputed facts show that Cunningham is a member of a protected class based on her race.  (Doc. 1 ¶ 16; Doc. 3 ¶ 16).  In addition, Penn National does not dispute that Cunningham had the necessary qualifications for the position she held and the promotion she sought.  (See Doc. 15 at 8-12; Doc. 27 at 3).  Thus,

---

[7] The Third Circuit has held that claims under § 1981 "require the same elements of proof as a Title VII action."  Lewis v. University of Pittsburgh, 725 F.2d 910, 915 n.5 (3d Cir. 1983); see also Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009) ("[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII.").  But see Pamintuan, 192 F.3d at 385 (holding that a *prima facie* case under § 1981 requires plaintiff to demonstrate that defendant "intentionally discriminated against her because she belonged to an 'identifiable class of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.'" (quoting St. Francis College, 481 U.S. at 612)).

Cunningham has met the first two prongs of the *prima facie* case. Penn National also concedes that it subjected Cunningham to an adverse employment action when it declined to select her for a promotion. Regarding Cunningham's claim of unequal pay, however, Penn National contends that Cunningham has not suffered an adverse employment action. The parties also dispute whether the circumstances of the instant case support an inference of discrimination. The court will address these issues *seriatim*.

        1.      **<u>Adverse Employment Action</u>**

With respect to her claim that Penn National wrongfully denied Cunningham a promotion when it hired another individual for the management position she sought, there is no doubt that Cunningham experienced an adverse employment action. It is textbook law that failure to promote constitutes an adverse employment action, see <u>Burlington Indus. v. Ellerth</u>, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as . . . failing to promote . . . ."), and Penn National does not argue to the contrary, (<u>see</u> Doc. 15 at 13 n. 4).

Penn National contends, however, that Cunningham has failed to show an adverse employment action with regard to her claim that Penn National paid her less than it paid her colleagues. Apparently presuming that maintaining a disparity in pay is *not* an adverse employment action, Penn National presents no argument or authority on that point. Instead, Penn National argues that Cunningham cannot rely on her annual performance evaluations, because they do not constitute adverse

7

employment actions. (Doc. 15 at 14-15). The court need not decide whether the evaluations qualify as adverse employment actions, however, because it concludes that "paying an individual a lower salary for discriminatory reasons can be an adverse employment action." Sherrod v. Phila. Gas Works, 57 F. App'x 68, 73 (3d Cir. 2003) (citing Stanziale v. Jaraowsky, 200 F.3d 101, 105 (3d Cir. 2000)). The court will therefore turn to the final element of plaintiff's *prima facie* case: whether the circumstances give rise to an inference of discrimination.

### 2. **Inference of Discrimination**

The "precise elements of a plaintiff's *prima facie* case may vary with the particular circumstances." Waldron v. SL Indus., 56 F.3d 491, 494 n.3 (3d Cir. 1995) (citing, *inter alia*, McDonnell Douglas, 411 U.S. at 802 n.14). Accordingly, a plaintiff can satisfy the fourth element of a *prima facie* case in a variety of ways.[8] A plaintiff could establish an inference of discrimination by showing "a rejection of plaintiff accompanied, or followed by, a filling of the job with a person not belonging to the

---

[8] In the instant case, several means to establish the final element of a *prima facie* case are inapplicable. For instance, an applicant who was never hired could show that "after [plaintiff's] rejection, the position remained open and the employer continued to seek applicants from persons of [the plaintiff's] qualifications." McDonnell Douglas, 411 U.S. at 802. A plaintiff whose employment was terminated could complete the fourth step of his *prima facie* case by showing that his employer replaced him with someone outside of his protected class, see Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1066 n.5 (3d Cir. 1996). Such a plaintiff might alternatively state a *prima facie* case by showing that his former employer "sought applicants with the plaintiff's qualifications." Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 939 (3d Cir. 1997) (citing Olson, 101 F.3d at 951). Given Cunningham's employment status, these methods of proof are unavailable to her.

8

protected category." Olson v. GE Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). Cunningham has shown that she was rejected for the position of Manager Centralized Audit & Agents Umbrella Processing, and that Penn National filled the job with a Caucasian person. (Doc. 1 ¶¶ 29, 31; Doc. 3 ¶¶ 29, 31). Thus, she has established a *prima facie* case with respect to her complaint that Penn National failed to promote her to that position. This method of proof is inapposite to Cunningham's claim of unequal pay, however, and the court will therefore examine whether she can establish a *prima facie* case on that claim through another method.

An inference of discrimination will arise where the plaintiff was "treated differently than similarly-situated, non-protected employees." Johnson, 214 F. App'x at 242. Similarly-situated employees are those who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 603 (M.D. Pa. 2002); see also Red v. Potter, No. 05-5256, 2006 WL 3349563, at *2 (3d Cir. 2006) (stating that "in order to show that an employee is 'similarly situated,' all of the relevant aspects of employment need to be nearly identical"). In the instant case, when viewing the evidence in the light most favorable to Cunningham, the nonmoving party, the evidence is sufficient to require a finder of fact to "resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

Specifically, the evidence shows that Cunningham's salary was lower than the salaries of most of Penn National's Caucasian raters and senior raters. Indeed, that fact is beyond dispute. (See Doc. 1 ¶¶ 22-28; Doc. 3 ¶¶ 22-28). Penn National argues that the higher-paid employees were not similarly situated to Cunningham.[9] Penn National asserts that the employees listed in the complaint, who had higher salaries than plaintiff, also had more prior experience in the insurance industry, a longer tenure with Penn National, higher merit ratings on their performance reviews, or a combination of these circumstances. (See Doc. 1 ¶¶ 23-28; Doc. 16 ¶¶ 42-46; Doc. 25 ¶¶ 42-46). Nevertheless, the court cannot find as a matter of law that these individuals are *not* similarly situated to Cunningham.

Although Cunningham's prior experience and merit ratings differed from those of the Caucasian employees named in the complaint, it is not clear that those differences are relevant to the pay disparity of which Cunningham complains. The record does not clearly establish what factors were determinative in setting each employee's salary. The salaries of the other employees in question may have been determined by factors which Cunningham shared in common with them, rather than by factors that distinguished them from Cunningham. Moreover, despite the differences noted above, Cunningham may be entitled to a comparable salary on

---

[9] Penn National also avers that two Caucasian employees in Cunningham's department were paid less than her.

10

the basis of other factors.[10] Therefore, there is a factual dispute as to whether any of the Caucasian employees who received higher wages from Penn National were similarly situated to Cunningham in all relevant aspects.[11] Granting summary judgment at step one of the McDonnell Douglas analysis would be inappropriate, and the court will therefore proceed with its review of steps two and three.

### B.     Defendant's Legitimate Reason

The defendant's burden to prove a legitimate non-discriminatory reason is "relatively light." Johnson, 214 F. App'x at 242-43. The defendant is only required to prove that its actions could have been motivated by the proffered legitimate,

---

[10] As noted, some of Penn National's other employees had more prior industry experience than Cunningham, and/or a longer history of service with Penn National, and/or better performance evaluations. However, Cunningham was certainly not inferior to each of the named Caucasian employees in each of these respects. (See Doc. 16 ¶¶ 42-46; Doc. 25 ¶¶ 42-46). Rather, in some of the evaluative criteria, Cunningham may be similar to higher-paid Caucasian employees, and these similarities may entitle her to equal wages. The court also notes that Cunningham's other credentials—such as her master's degree—may qualify her for a salary equal to the salaries of other employees with similar experience.

[11] Cunningham also relies on comments purportedly made by her supervisor that she was "too strong," and contends that her supervisor did not make such comments to other employees. (See Doc. 25, Ex. B at 44). The court is not persuaded that such comments show racial discrimination, for two reasons. First, the alleged statement is vague and provides little, if any, support for Cunningham's contention that she was subjected to discrimination on the basis of her *race*. Cunningham herself stated that the comments were "about my personality." (Id.) Second, the statement seems to be a stray remark, and the Third Circuit has held that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992). Thus, the alleged comments do not establish an inference of discrimination.

11

nondiscriminatory reason; proof of actual causation is not required. Iadimarco, 190 F.3d at 157. Penn National has satisfied this standard with respect to both of Cunningham's claims—failure to promote and discriminatory pay. Regarding its decision to promote another employee to the position Cunningham sought, Penn National argues that Hathaway, the individual selected for the position, was more qualified than Cunningham, because Hathaway had prior supervisory experience which Cunningham lacked. With regard to Cunningham's allegations of unequal pay, Penn National avers that it relies on a non-discriminatory system—the Hay Point System—to establish employee salaries. Under the Hay Point System, a specific salary range corresponds to each position. Penn National explains that "[w]here an employee falls within that range is determined by several factors including prior industry experience and job performance." (Doc. 15 at 17-18.) According to Penn National, Cunningham's low salary is attributable to the fact that she had relatively little industry experience when she was hired, and she has had performance issues during the course of her employment. These legitimate explanations for the defendant's employment actions suffice to shift the burden to plaintiff to show pretext.

### C. **Plaintiff's Evidence of Pretext**

The plaintiff may demonstrate pretext by presenting evidence from which a reasonable factfinder could "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."

Keller, 130 F.3d at 1108. In the case *sub judice*, Cunningham has failed to show pretext in relation to her claim of unequal pay, but she has supported her failure to promote claim with evidence that could establish pretext.

In support of her claim of discriminatory pay, Cunningham relies on her supervisor's admission that she exercised discretion in determining whether or not a mistake would count against an employee as an error and in setting the size of the raise an employee would receive within the Hay Point System's range. This evidence, without more, is inadequate to create a genuine issue of material fact as to whether Penn National paid Cunningham a lower salary because of her race. To conclude otherwise would dramatically "diminish traditional management prerogatives," which Title VII was not intended to do. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 259 (1981) (quoting Steelworkers v. Weber, 443 U.S. 193, 207 (1979)). It is Cunningham's burden to present affirmative evidence that would be sufficient to sustain a judgment in her favor, and her evidence of supervisor discretion falls short of this standard. Therefore, Penn National is entitled to summary judgment on Cunningham's claim of unequal pay.

Cunningham has presented additional evidence which precludes summary judgment on her failure to promote claim. Specifically, she testified that Warren Dutka ("Dutka"), one of the individuals who conducted interviews for the management position she sought, informed her that she received the highest score[12]

---

[12] Although it is of no consequence to the court's analysis, it is interesting to note an ambiguity in the remark plaintiff attributes to Dutka. One might construe

in nine out of ten categories upon which she was rated. (See Doc. 24 at 2, 6; Doc. 25, Ex. B at 84). She further contends that Dutka stated that Hathaway, the individual who ultimately filled the position, received the highest score in only one category. (Doc. 25, Ex. B at 84). Although the record contains evidence to the contrary,[13] the court must view the evidence in the light most favorable to Cunningham at this juncture. Under this standard, Cunningham's evidence is adequate to avoid summary judgment, because it creates a genuine dispute of fact as to whether Cunningham received the high ratings she claims to have received. If a reasonable jury found that she did, then it might further conclude that Penn National's stated reasons for awarding the position to Hathaway were pretextual. Even though the

---

the statement alleged to mean that Cunningham's scores topped all the other applicants' scores in nine out of ten categories. However, it is equally plausible that, if Dutka made such a statement, he meant that Cunningham received the best possible scores in those categories. Under the latter interpretation, it is not clear that Cunningham received the top score of all the applicants, insofar as it is possible that other applicants achieved equal ratings. Admittedly, though, the alleged remark does indicate that Cunningham's score exceeded Hathaway's, because Hathaway purportedly received the highest score in only one category.

[13] Dutka denies the truth of the statements alleged and asserts that Cunningham "was not the highest candidate and her numbers didn't come out the highest." (Doc. 17, Ex. E at 12.) The record also contains summaries of each candidate who was interviewed for the position. (See Doc 27, Ex. A at 2). These interview summaries indicate that Cunningham "demonstrated acceptable or higher levels for all of the competencies for the Manager Centralized Audit & Agents Umbrella Processing position" (Doc. 27, Ex. A at D 153), while Hathaway "demonstrated more than acceptable levels for all of the competencies" (Doc 27, Ex. A at D 150). Hence, both the summaries and Dutka's testimony indicate that Hathaway's scores were higher or at least as high as Cunningham's.

14

disputed fact does not conclusively demonstrate pretext,[14] it renders summary judgment inappropriate. The Supreme Court has held:

> [T]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

Anderson, 477 U.S. at 248-49 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). The existence of this genuine dispute of fact prevents the court from granting summary judgment on Cunningham's failure to promote claim.

---

[14] Even if a jury credited Cunningham's testimony regarding her ratings, that would not inevitably lead to the conclusion that Penn National's stated reasons for promoting Hathaway were a pretext for racial discrimination against Cunningham. Much of the evidence in the record indicates that Hathaway was selected on the basis of her prior supervisory experience. It is within Penn National's prerogative to make one criterion, such as supervisory experience, determinative in its hiring decision. An employer's failure to give equal consideration or weight to each factor does not necessarily establish that it was truly motivated by unlawful discrimination. Obviously, resolution of this matter requires a fully developed factual record.

## IV. <u>Conclusion</u>

Cunningham has come forward with sufficient evidence to make out a *prima facie* case of racial discrimination. She has also presented evidence from which a reasonable jury could conclude that Penn National's stated reasons for failing to promote her were pretextual. However, her evidence is inadequate to demonstrate that Penn National's system for setting employee wages are a pretext for discrimination. The court will therefore deny summary judgment on Cunningham's failure to promote claim, but it will grant summary judgment in Penn National's favor on her claim of discriminatory pay.

An appropriate order follows.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:       February 2, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MYRA CUNNINGHAM,** | : | CIVIL ACTION NO. 1:08-CV-0587 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **PENN NATIONAL HOLDING CORPORATION, t/d/b/a PENN NATIONAL INSURANCE,** | : | |
| **Defendant** | : | |

## ORDER

AND NOW, this 2nd day of February, 2010, upon consideration of defendant's motion for summary judgment (Doc. 14), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for summary judgment (Doc. 14) is GRANTED in part and DENIED in part as follows:

   a. The motion is GRANTED insofar as it seeks dismissal of plaintiff's claim of discriminatory pay.

   b. The motion is DENIED in all other respects.

2. A revised pretrial and trial schedule shall issue by future order of court.

                                                S/ Christopher C. Conner
                                                CHRISTOPHER C. CONNER
                                                United States District Judge